[Cite as *State v. McMichael*, 2012-Ohio-1343.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
Nos. 96970 and 96971

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TREA MCMICHAEL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-546065 and CR-546110

**BEFORE:** Boyle, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 29, 2012

**ATTORNEY FOR APPELLANT**

Patricia J. Smith
4403 St. Clair Avenue
The Brownhoist Building
Cleveland, Ohio   44103


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:    Sherrie S. Royster
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Defendant-appellant, Trea McMichael, appeals his convictions claiming they were against the manifest weight of the evidence. Finding no merit to his appeal, we affirm.

Procedural History and Facts

{¶2} In January 2011, the grand jury indicted McMichael on seven counts for events that occurred around 1:00 a.m. on January 19, 2010, involving victim Oscar Harris. The counts included two counts of kidnapping, two counts of aggravated robbery, two counts of felonious assault, and one count of discharging a firearm on or near prohibited premises. The kidnapping, aggravated robbery, and felonious assault counts carried one- and three-year firearm specifications.

{¶3} Approximately one week later, the grand jury indicted McMichael on six counts for events that occurred around 7:00 a.m. on January 19, 2010, involving victim Jennifer Caldwell. The counts included kidnapping, aggravated robbery, grand theft, receiving stolen property, trafficking, and possessing criminal tools. The kidnapping, aggravated robbery, grand theft, and receiving stolen property charges carried one- and three-year firearm specifications, and the drug counts carried forfeiture specifications.

{¶4} The cases were consolidated for purposes of trial and appeal. The following facts were presented to a jury.

**{¶5}** Oscar Harris testified that on the morning in question, around 1:00 a.m., he was driving northbound on "108th off of Superior" when he stopped at a stop sign at the corner of 108th Street and Hampton Avenue to talk to "a young lady about a guy that had an aneurysm." When he did, two men approached his car. One of the men, later identified to be co-defendant, Mitchell Taylor, had a "revolver" and said, "You know what this is." McMichael was later identified to be the other man with Taylor. Harris immediately started to drive away, but Taylor shot three times into Harris's vehicle. One of the shots hit Harris in the arm. Harris drove home and called 911. Harris testified that it was well lit near the stop sign because a street light was about ten feet away. Harris said the men were young, African American, and wearing dark clothes.

**{¶6}** Jennifer Caldwell testified that she is a teacher at Joseph F. Landis School. She said that when she arrived at work on the morning of January 19, 2010, she was approached by two African American males in dark clothing. She noticed that one of the men had a gun near his waist, pointed down toward the ground. He said to her, "As long as you give us the keys to your car, and your purse, we will not hurt you." She complied. The men then told her not to move, and they got into her car and left. She went into the school and called 911.

**{¶7}** Later that morning, police officers David Jones and Renee Perez received a report that a carjacking had taken place earlier that day. They spotted Caldwell's vehicle on Lee Road. They saw two men sitting in the front of the car. They turned around to

follow the car and saw it pull into a driveway. The men jumped out of the car and took off running. The officers lost sight of them and radioed for assistance.

{¶8} Officer Reginald Beddard testified that he works in the canine unit. He arrived at the scene where the stolen car was parked. His dog, Jack, picked up the men's scent and tracked them to an abandoned building, where the officers found Taylor and McMichael.

{¶9} Detective Vincent Lucarelli testified that Harris identified Taylor and McMichael from a photo array. Harris identified Taylor as the man who shot him and McMichael as the man who was with Taylor.

{¶10} Sonya West, McMichael's mother, testified on her son's behalf. Although she testified to generally knowing when her son got home from school, what time he went to bed, and what time he left for school, she admitted that she could not specifically recall the specifics of the night in question because it had taken place a year and a half before the trial. She testified that "to the best of her knowledge," McMichael was at school on January 19, 2010. West further stated that she had met Taylor through her son, but said that her son was not good friends with Taylor.

{¶11} Taylor testified for the defense. Taylor said that he was serving three years at the Ohio Valley Juvenile Correctional Facility for his part in the crimes against Harris and Caldwell.

{¶12} Taylor testified that on the morning of January 19, 2010, he was walking

down "105th and Hampton" when he saw Harris's vehicle. Taylor said that Harris was "giving some lady some drugs or whatever." Taylor "ran up on the car, * * * put the gun in the window, [and] told [Harris] give me everything." Taylor said that when he did that, the woman who Harris had been talking to was walking down the street. Taylor said he saw Harris "reach for his gun," so Taylor "started shooting in the car." Taylor testified that he acted alone.

{¶13} Taylor explained that he did not sleep that night; he just walked around the area. The next day around 10:00 or 11:00 a.m., he was "walking down by Lee" when he saw Caldwell's vehicle parked, but running. Taylor said he got in the car and drove away. Taylor picked up two women he knew who flagged him down and then went to McMichael's house because he "needed some CDs" and he knew that McMichael made rap CDs. McMichael gave Taylor the CDs and asked Taylor for a ride. As they were driving down Lee, they saw the police. Taylor parked the car and they ran into an abandoned building where the police found them.

{¶14} On cross-examination, Taylor said that he had been friends with McMichael for a few months before they were arrested.

{¶15} The jury found McMichael guilty of all counts in the case involving Harris, and guilty of receiving stolen property, trafficking, and possessing criminal tools in the case involving Caldwell. The trial court sentenced McMichael to an aggregate of eight years in prison for both cases. It is from this judgment that McMichael appeals,

challenging only the manifest weight of the evidence.

<u>Manifest Weight of the Evidence</u>

**{¶16}** A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

**{¶17}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶18}** Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

**{¶19}** McMichael argues that Harris's identification of him was not credible because it was "after midnight and dark outside." McMichael further contends that Harris was not credible because he was "talking with a prostitute and selling her drugs." McMichael maintains that Harris drove home before calling 911 because he needed to

"get rid of his gun and drugs before he called police." McMichael also argues that Taylor was more credible than Harris. He asserts that McMichael's mother testified that Taylor and McMichael were not friends. He further asserts that Taylor testified unwillingly and his version of the events was "quite credible and consistent." And McMichael contends that Taylor, "although a delinquent, had no motive to lie."

{¶20} Here, however, the jury chose to believe Harris over Taylor. After independently reviewing the record before us, we conclude that this is not the case where the jury "clearly lost its way" and "created a manifest miscarriage of justice." Taylor may have been consistent in his version of the events, but no more so than Harris. Indeed, Harris and Taylor's version of the robbery and shooting were nearly identical — except for McMichael's presence. And although West testified that McMichael and Taylor were not friends, Taylor contradicted that and said they had been friends for a few months before they were arrested. Thus, Taylor certainly had motive to lie — to protect his friend. Taylor had already been convicted for his part in the crimes and had nothing to lose if he testified for McMichael.

{¶21} Accordingly, McMichael's convictions were not against the manifest weight of the evidence. His sole assignment of error is overruled.

{¶22} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR